The next case this morning is 522-0451 People v. April Penrod. Arguing for the defendant appellant is Chris Sealoff. Arguing for the state appellee is Hiram Fenjack. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Morning, your honor. Mr. Sealoff, have you had enough time to collect your thoughts for this case? Yes, your honor. Then go right ahead. Your honors, counsel, may it please the court, my name is Assistant Appellant Defender Chris Sealoff and I represent the defendant appellant, Ms. April Penrod. The circuit court abused its discretion in denying Ms. Penrod's motion to withdraw a guilty plea because she clearly demonstrated that the only reason she pled guilty was to get necessary medical attention that jail staff were not providing for her. Alternatively, defense counsel was ineffective for not filing an amended motion to withdraw upon remand because it unnecessarily made it more difficult for Ms. Penrod's claims to be heard. Beginning with this second issue in Ms. Penrod's brief, defense counsel's failure to amend Ms. Penrod's motion to withdraw upon remand constituted ineffective assistance for a number of reasons. First, the failure to amend the motion to withdraw upon remand injected unnecessary ambiguity into the second hearing on her motion to withdraw. The record clearly shows that defense counsel's theory of the case changed from the initial hearing to the remand hearing. At the initial hearing, defense counsel argued that Ms. Penrod could not understand what was happening because of her medical condition. This argument complied with the initial and only motion to withdraw that defense counsel filed. At the remand hearing, however, defense counsel changed the theory of the case, now arguing that Ms. Penrod could understand what was happening but only pled guilty to get medical care for an emergent medical condition that was not being treated properly by jail staff. As argued in the opening and reply briefs, there was no benefit to not amending the motion to withdraw upon remand, especially where the theory changed from one hearing to another. The counsel amended the motion to include not only this new argument but the documentary evidence in support of the new argument that was put forward at the remand hearing. It is likely that the circuit court and state would have been more willing to accept that Ms. Penrod's guilty plea was involuntary. The state attempts to argue that there's no evidence that the state and the circuit court were not prepared for this new argument, but this argument is contradicted by the record. At the remand hearing, the state argued that it had not heard this new theory until the hearing itself, as seen on the report of proceedings, page 55, clearly contradicting the state's argument on appeal that no one was surprised by this change in theory. This leads to my second point. The defense counsel was ineffective for failing to amend the motion to withdraw on remand because this court ordered him to do so if necessary. Similar to the arguments above, not only would amending the motion to withdraw upon remand have been a sound decision given the change in theory, but it also would have comported with this court's order to amend the motion. It is difficult to envision a scenario where an entirely new theory of the case with new documentary evidence would not require an amended motion upon remand, especially where this court ordered plea counsel to amend the motion. Finally, an amended motion was necessary based on case law cited by the state in its response brief. As noted in Ms. Pennerot's reply brief, the state correctly notes on page 14 and 15 of its response brief that People v. Montauk from the 4th District does not require a second remand for 604D compliance. However, the four sentences immediately following the language cited by the state make it clear that this was a one-time allowance because failure to comply with the requirements of 604D not only means he fails to follow clear and mandatory procedure, but also creates an unclear record. As the 4th District in Montauk so eloquently stated, quote, Rule 604D compliance is not difficult. Such issues should not continue to occur, unquote. This is one of the most important points that Ms. Pennerot raised on appeal. Not only was the failure to amend the motion bad on the merits of presenting her position upon remand, but it was such an easy step to take to make sure that her argument was clearly stated before the circuit court. The defense counsel simply amended the motion to withdraw upon remand to articulate the new theory and present the newly acquired documentary evidence. He could have avoided the state's confusion on the issue and properly prepared all parties to understand what was at issue. Defense counsel's failure to amend the motion to withdraw upon remand unnecessarily injected confusion and ambiguity into this case, ignored this court's order, and there was no reason not to undertake such an easy and obvious course of action. Had he done so, it is likely that both the circuit court and the state would have been better acquainted with the issue and therefore more likely to agree that Ms. Pennerot's involuntary plea was the direct result of an emergent medical condition and the jail staff's failure to adequately provide medical care for it. Accordingly, defense counsel's performance was deficient in failing to undertake the easy, obvious, and necessary step of amending the motion to withdraw upon appeal, pardon me, upon remand, and the outcome likely would have been different had he done so. Alternatively, the circuit court abused its discretion in denying Ms. Pennerot's motion to withdraw upon remand. The circuit court had plenty of evidence before it that the only reason Ms. Pennerot pled guilty was to get medical care that she believed was not being provided to her by the jail staff. At the remand hearing, Ms. Pennerot's unrefuted testimony made clear that she had been suffering from a growing lesion under her arm and the jail staff were not doing enough to care for her medical condition. As evidence of this testimony, Ms. Pennerot provided documents from the hospital she went to immediately after she was released from jail. According to those documents, Ms. Pennerot was immediately taken into surgery upon entering the hospital and had 50 to 60 milliliters of quote, foul-smelling pus drained from the lesion under her arm. Ms. Pennerot further testified that the nurse who visited her had prescribed medication for her, but on a return visit days later was shocked to find that the jail staff had not provided her with medication. The failure to provide medical care is what prompted Ms. Pennerot to testify that quote, I knew that pleading guilty was the only way to get out, period. The state attempts to argue that Ms. Pennerot should have said something at the initial plea hearing, but this argument ignores the entire point of motions to withdraw, that involuntary pleas cannot stand and should be allowed to be withdrawn when they are not based on recognition of guilt. The state further argues that People v. Err from the First District and People v. Peterson also from the First District support this argument. However, those cases also hold that guilty pleas based solely on unsafe jail conditions are not valid. It would be inconsistent with the purposes of both the withdrawal of guilty pleas and the central holdings of those cases to prevent a defendant from withdrawing from an involuntary guilty plea based on nothing more than a matter of timing. The circuit court had all the evidence it needed to grant Ms. Pennerot's motion to withdraw, and there was no evidence contradicting her argument because no rational person in the circuit court's shoes would have made the same decision. It was an abuse of the circuit court's discretion to deny Ms. Pennerot's motion to withdraw. Finally, there's the issue of the circuit court's failure to comply with Rule 402. The most glaring oversight by the circuit court is from its failure to admonish Ms. Pennerot under Rule 402B. If we find that there was a failure to substantially comply with 402, do we even reach this issue about the court abusing its discretion and failing to allow her to withdraw the guilty plea? This court can obviously remand for failure to comply with Rule 402. It doesn't need to necessarily rule on the motion to withdraw and the merits. So, yes, if there was no compliance with Rule 402, this court can vacate the decision and remand or outright grant the withdrawal of the guilty plea and remand for either a new plea or to continue to trial. Yeah, well, which remedy would you argue for, opt for?  Ms. Pennerot would go so far as to say that this plea should just be withdrawn if this court does find a failure to comply with Rule 402, specifically because the circuit court already abused its discretion and not initially granting the motion to withdraw on the merits. And so it would make sense then if this court finds also failure to comply with Rule 402 or decides that it doesn't need to reach the issue, based on the arguments we have raised, that the motion withdrawal should be granted, the plea withdrawn, and sent back to the trial court either for a new plea or a trial. All right. Thank you. Of course, John. Just briefly, to finish the final discussion of Rule 402B, that rule requires circuit courts to question potential guilty plea entrants whether any threats or promises have been made to induce the plea. And had that question been asked, this whole appeal likely could have been avoided because had the question been asked, as was required, Ms. Pennerot likely then would have had a moment to say, oh, great, I get a chance to explain. I have this lesion under my arm. I've been asking and asking the jail staff to do it. Nothing's happening. The nurse prescribed me medication. They're not getting it to me. This lesion's growing. I've got to get out. The only way I can get help is if I get out of jail. That's the only reason I'm pleading guilty. Had the court asked that question, likely not only the initial appeal that resulted in summary remand, but, again, this appeal probably could have been avoided. In summary, defense counsel was ineffective for failing to amend the motion to withdraw because it would have clearly and accurately stated Ms. Pennerot's case and prevented the state from arguing that it had never heard such an argument until the remand hearing. This court ordered such a decision, and the plea likely would have been withdrawn had counsel simply amended the motion withdrawal. Alternatively, circuit court abuses discretion on the merits of the motion withdrawal because it was clear Ms. Pennerot only entered the guilty plea as the result of her emergent medical condition that the jail staff were not treating, and the circuit court's failure to properly admonish under Rule 402 likely would have circumvented both of the appeals at issue in this case. If your honors have any questions, I'm happy to answer them at this time. Well, thank you, counsel. Justice Welch or Justice McGee? Nothing further. And obvious, Mr. Seleff, you'll have your time for rebuttal. Mr. Fenjack, go right ahead. Good morning, your honors. This is Hiram Fenjack with the state's attorney's appellate prosecutor representing the state of Illinois. When a defendant claims, as the defendant does here, that he or she only pled guilty due to jail or prison conditions, it does not necessarily follow that the plea was involuntary. The defendant must also allege a specific instance of abuse which caused him or her to plead guilty, and the defendant must establish a nexus between the alleged abuse and the guilty plea. Here the defendant has failed to establish that the Lawrence County Jail failed to provide her with necessary medical care, nor has she established the necessary link between this alleged lack of medical attention and her decision to plead guilty. The defendant's testimony at the hearing on her motion to withdraw, in which she claimed that nothing was being done by jail staff to treat her infection, is not supported by the record of the plea hearing itself. At the plea hearing, the defendant never gave any indication that the jail's lack of medical care was the motivating factor in her decision to plead guilty. During the hearing, defense counsel even discussed the fact that the defendant, who was about to be released pursuant to her plea agreement, was scheduled for an upcoming surgery after being discharged. It's apparent from counsel's comment regarding the defendant's impending surgery that prior to pleading guilty, she had discussed her medical condition with counsel. However, at the hearing, neither counsel nor the defendant ever indicated to the court that her medical condition was not being attended to by the jail and that she was pleading guilty for that reason. Furthermore, the hospital documents offered into evidence at the remand hearing on her motion to withdraw only demonstrate that she underwent a medical procedure shortly after being released from jail, not that the jail had been refusing or neglecting her care prior to her release. This was correctly pointed out by the trial court, who noted that the mere fact that she was operated on right after she got out is not really the relevant inquiry. The inquiry is how long she was in jail with that condition and had requested treatment. On that point, beyond the defendant's testimony that nothing was being done by the jail staff to treat her condition, she provided no evidence to support that assertion and neglect, such as jail records documenting whether she had requested or received any type of medical care while incarcerated or an affidavit or testimony from the nurse who the defendant claims prescribed her medication that was never actually provided by the jail staff. In fact, the only evidence that appears to provide any information on what care she did receive while in jail was the Lawrence County Hospital's discharge summary, which she offered as evidence at the remand hearing. The summary noted that during her incarceration, the defendant had developed an infection, had been provided with antibiotics, and it indicated that the defendant had actually received medical care for her condition while incarcerated, which is seemingly at odds with her claim that the jail did nothing to address her medical situation. The defendant argues that the state should have provided evidence proving that the jail provided her adequate medical care. However, a defendant seeking to withdraw her guilty plea bears the burden of showing the necessity for the withdrawal. Therefore, it was not the state's responsibility to demonstrate that she had received proper medical care. The defendant claims that her argument is not an attempt to shift the burden onto the state, but rather that her testimony and evidence presented an unrebutted case that the jail failed to provide adequate medical care. The problem with this argument is that her testimony and evidence did not amount to an unrebutted case of medical neglect by the jail. Her after-the-fact testimony that she only pled guilty because of neglect was contradicted by the record at the plea hearing, and she did not raise the issue of medical attention, lack of medical attention being the cause of her plea. And her documentary evidence only illustrates that she received treatment at the hospital shortly after being released, which provides no insight to what type of care she received at the jail. In fact, the only evidence indicates that she was, in fact, placed on antibiotics by the jail staff. Given the defendant's failure to produce evidence supporting her claim, that inadequate medical care while incarcerated was the reason behind her decision to plead guilty, the trial court's denial of her motion should be affirmed by this court. With respect to the issue of the 402 admonishments, the defendant contends that the court's admonishments were inadequate because the court did not mention the minimum sentence she could receive, the right that she had to plead not guilty, and that she'd be waiving her right to be confronted with any witnesses against her. And additionally, that the court did not ask her whether any forced threats or promises had induced her to plead guilty. However, the failure of the trial court to strictly comply with Rule 402 does not necessarily establish grounds for vacating the defendant's guilty plea. How is the admission of all of those elements in 402, how does that substantial compliance? The state's position is that the omissions did not go to cause the defendant, in absence of the, in lieu of the omissions, the defendant still would have pled guilty. The defendant cannot establish she was prejudiced by the court's incomplete admonishments. She hasn't explained how her decision to plead guilty would have been different. The court had admonished her regarding the minimum possible sentence, her right to plead not guilty, or her right to be confronted with witnesses. As far as her argument that her plea was involuntary based on the conditions of her, it was based on the conditions of her incarceration, not on any confusion over the minimum sentence, or whether she had the right to plead guilty or be confronted with witnesses. As far as the 402 admonishment, as far as whether there were any forced threats or promises that induced her to plead guilty, the record demonstrates that her plea was given voluntarily and was not the result of any forced threats or promises. The defendant's medical condition was raised at the plea hearing, and the record at the hearing demonstrated she voluntarily and knowingly pled guilty to the charge of offense. As the, excuse me, as the Illinois Supreme Court said in People versus Ellis, if upon review of the entire record, it can be determined that the plea of guilty was voluntary and was not made as the result of forced threats or promises. The error resulting from failure to comply with, comply strictly with rule 402B is harmless. Well, counsel, didn't she plead on the, her initial appearance? Yes, she did. Well, then how is there, what, what, what, what entire record is there to rely on? It's got to be the time that the trial court admonished her. That's that single moment. There is no entire record to rely on. Is there? The record that I'm speaking of is at the plea hearing, the issue of her medical condition was raised. The attorney, her attorney said she's due for surgery in a couple of days and it was never, neither counsel nor her ever said she's not guilty. She just has to plead guilty to get out of jail and have the surgery. So state's position is that the plea was voluntary based upon that record there. As far as the inadequacy of, or the ineffective assistance of plea counsel, as defendant has pointed out, counsel presented a substantially different set of arguments at the second hearing. At the remand hearing, the defendant was allowed to present her arguments. The trial court squarely addressed those arguments on their merits. There's no indication that the, the court was taken aback or felt ambushed by her new arguments, whether the state was or not is besides the point. The, the, the court directly addressed her arguments. It didn't make an issue of them being new or any, anything of that, that nature. And correctly rejected her motion to withdraw her guilty plea. Thank you, your honors. That's all I have. If you have any questions, I'd be happy to answer them. Thank you. Counsel, justice Welch or justice. Nothing further. All right. Well, thank you counsel. Mr. See left, go right ahead with your rebuttal. Thank you, your honor. Just a few points. Briefly on rebuttal. The state argues that Ms. Penrod never mentioned anything in the plea hearing. So seems like effectively she can never challenge the plea. I know that's not exactly what was said, but I do believe that is sort of the spirit of the argument that. Unless you raise an issue with the plea hearing, why should we really ever believe anything you raise an emotional draw? Well, the answer to that is because it's the whole point of emotion withdraw. The point of emotion withdraws. If your plea is involuntary, you get a reason to state why it was voluntary. In this case, the reason Ms. Penrod didn't say anything and plea hearings, because as she testified clearly at both hearings on the, her motion would draw. She knew that the only way to get out of jail was to plead. Not it was to plead guilty. And so the reason she didn't bring anything up is because it was a tactical decision. It was an involuntary plea coerced by her medical condition. To that point, The state says that the discharge summary shows that she was treated and that the question isn't how long she went untreated. Or rather the relevant inquiry is how long she was untreated before entering the guilty plea. To that end, the evidence presented at the remand motion hearing shows that at the very least, it was a couple of days that she wasn't getting medication. And the state says, well, she did eventually get the medication as shown at the discharge summary. Right. But medication isn't what was needed. And anybody who looked at her would have been able to see a, a quarter cup size of pus growing under her arm and said, a couple of pills probably isn't going to treat this. And that's evidenced by the fact that as soon as she got out within four hours, she went to the hospital. And then when she got in the hospital, they said, wow, you've got to go to surgery immediately. They took her in, they cleared the abscess. And then she was better. So the state's already there. I don't disagree with what you just said. Other than to point out, isn't it. In some of these types of cases, a little bit of quote, unquote, buyer's remorse. After a plea that a defendant, I'm not saying your defendant. May make claims that as to why they took a plea, you know, After the fact that let's be honest, some of them, let's say lack merit. So I'm not saying that's your case, but I'm saying, isn't that also a possibility? It certainly is a possibility in other cases, your honor. And if we were arguing a different case, perhaps that would be a beneficial argument for the state. But in this case, the evidence we have shows that Ms. Penrod had this growing lesion under her arm that the state either, pardon me, the jail staff. Either wasn't doing anything about, or the things they were doing about simply were inadequate. And that pushed her and pushed her to the point where she had to make this decision to plead guilty, not because she wanted to acknowledge consciousness of guilt or because she believed that the state just had her dead to rights, no matter how much she wanted to disprove the charge. Her alleged actions in doing or not doing what she was charged of had no connection between her decision had no connection to her decision to plead guilty. That's why the motion would draw should have been granted because the guilty plea itself wasn't based on any valid basis for entering a plea other than not getting medical help that she needed. As a final point that I just wanted to briefly address, the state argue takes issue with Ms. Penrod saying in the opening brief that the state didn't provide any evidence to the contrary. The state in its response brief said you can't burden shift. Ms. Penrod in her reply brief said it's not burden shifting. We're saying that she presented all of this evidence and the state didn't disprove it. And this sort of dovetails with the ineffective assistance argument that they presented all this evidence and the state didn't disprove it. The state doesn't have a burden to disprove. However, when the defense makes its case on a motion would draw the state, if it wants to win has to disprove that case. And the reason the state couldn't provide any evidence is likely because defense counsel so changed the theory that the state, again, was unprepared as noted by its quote on page 55 about this being the first time it's ever heard this theory. It was unprepared to defend against it. So that lack of preparation dovetails with the ineffective assistance argument. And just finally, as to the rule 402, a minute management's justice McKinney, you mentioned how is it possible to substantially comply if the circuit court effectively doesn't ask any of the 402 admonishments and Ms. Penrod would maintain as she raised in the opening and reply briefs that it was not substantial compliance with rule 402. The circuit court failed to ask not only the 402A questions, but the 402B questions. And had it done so a lot of this litigation likely could have been avoided. Thank you, counsel. Before we let these gentlemen go for the day, Justice McKinney or Justice Welch, do you have any questions? No questions. Well, thank you, counsel. Obviously we'll take the matter under advisement. We will issue an order in due course. I believe that finishes our oral arguments for this morning. So this court will stand in recess until tomorrow morning at nine o'clock.